1 DURIE TANGRI LLP
RAGESH K. TANGRI (SBN 159477)
2 rtangri@durietangri.com
JOSHUA H. LERNER (SBN 220755)
3 jlerner@durietangri.com
217 Leidesdorff Street
4 San Francisco, CA 94111
Telephone: 415-362-6666
5 Facsimile: 415-236-6300

6 Attorneys for Defendants
UBER TECHNOLOGIES, INC., TRAVIS KALANICK,
7 GARRETT CAMP, BILL TRENCHARD, SCOTT
BELSKY, BILL GURLEY, BENCHMARK CAPITAL,
8 BENCHMARK, FOUNDER COLLECTIVE, FIRST
ROUND CAPITAL, RASIER, LLC, RASIER-CA, LLC

9

10                IN THE UNITED STATES DISTRICT COURT

11             FOR THE NORTHERN DISTRICT OF CALIFORNIA

12                        OAKLAND DIVISION

| | |
|---|---|
| 13 KEVIN HALPERN & CELLURIDE WIRELESS INC. | Case No. 4:15-cv-02401-JSW |
| 14 | **NOTICE OF MOTION AND JOINT MOTION** |
| 15 Plaintiffs, | **TO DISMISS BY DEFENDANTS UBER** **TECHNOLOGIES, INC., TRAVIS** |
| 16 v. | **KALANICK, AND BILL TRENCHARD** |
| 17 UBER TECHNOLOGIES INC., TRAVIS KALANICK, GARRETT CAMP, BILL | Date: August 28, 2015 Time: 9:00 a.m. |
| 18 TRENCHARD, SCOTT BELSKY, BILL GURLEY, BENCHMARK CAPITAL, | Crtm: 5, 2nd Floor Judge: The Honorable Jeffrey S. White |
| 19 BENCHMARK, FOUNDER COLLECTIVE, FIRST ROUND CAPITAL, RASIER, LLC | |
| 20 (erroneously sued as "RAISER L.L.C."), RASIER-CA, LLC (erroneously sued as "RAISER CA | |
| 21 L.L.C.") and DOES 1-250 | |
| 22 Defendants. | |
| 23 | |

24

25

26

27

28

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT on August 28, 2015, at 9:00 a.m., Defendants Uber Technologies, Inc., Travis Kalanick, and Bill Trenchard, (collectively, "Defendants") by their attorneys Durie Tangri LLP, will and hereby do move to dismiss the Complaint in this action under Federal Rule of Procedure 12(b)(6), as the Complaint fails to state any claim upon which relief can be granted.

This Motion is based upon this Notice of Motion and Memorandum of Points and Authorities in support thereof, the Complaint and other pleadings on file in this matter, the arguments of counsel, and all other material which may properly come before the Court at or before the hearing on this Motion.

## SUMMARY OF ARGUMENT

Plaintiffs' Complaint should be dismissed for five reasons:

First, all claims in the Complaint are barred by the statute of limitations. Plaintiffs allege that Halpern came up with and shared the idea for a new and valuable industry—ride sharing—with certain Defendants. But Plaintiffs' own pleadings, articles from major media outlets, and published patent applications show that a lay person, let alone Mr. Halpern—who claims to be a fixture in the technology community—would have suspected Defendants of misusing his alleged idea well more than three years before this lawsuit. That is fatal to all of the claims in the Complaint.

Second, Plaintiffs' trade secret claim should be dismissed for the additional reason that Plaintiffs purported secrets were not actually secret. Plaintiffs disclosed Mr. Halpern's alleged invention with little or no efforts at confidentiality, and without any written agreements to protect them. Thus, Plaintiffs disclosed the alleged secrets, and failed to take reasonable measures to maintain their secrecy.

Third, Plaintiffs' conversion claim should be dismissed for two additional reasons: it is preempted under the Copyright Act, as explained in Defendants' Opposition to Plaintiffs' Motion for Remand, and it is preempted by the California Uniform Trade Secret Act.

Fourth, Plaintiffs' breach of contract claim should be dismissed for the additional reason that Plaintiffs have not identified a single specific contract, let alone pled the elements for breach of contract.

Fifth, Plaintiffs' declaratory judgment claim should be dismissed because it is nothing more than a request for a declaration as to the foregoing claims, all of which fail. Even if the foregoing claims were valid, Plaintiffs have pled that the claims provide an adequate remedy, which is fatal to this claim.

# TABLE OF CONTENTS

Page

I.   INTRODUCTION .................................................................................................1

II.  BACKGROUND FACTS .....................................................................................2

    A.   Halpern Alleges That the Idea for the Ride-Sharing Industry Was His. ............................2

    B.   Uber's Success—And Defendants' Use of Halpern's Alleged Idea—Was Well Documented More Than Three Years Before Plaintiffs Filed Their Complaint. ...............3

    C.   Halpern Shared His Alleged Invention with Others Without Any Written Protection. ......................................................................................................4

    PLAINTIFFS' CLAIMS ARE FATALLY FLAWED AND SHOULD BE DISMISSED. ............4

    A.   Plaintiffs Cannot Satisfy the Legal Standard for a Viable Complaint. ................................4

    B.   All of Plaintiffs' Claims Are Time-Barred. .........................................................................5

        1.   The Trade Secrets Claim Is Well Beyond the Statute of Limitations. ....................5

        2.   The Conversion Claim Is Time-Barred Because the Statute of Limitations for It Was Triggered at the Same Time as for Misappropriation.............................7

        3.   The Breach of Contract Claim Likewise Is Time-Barred Because Halpern Had Constructive Knowledge of It Years Ago. ......................................................8

    C.   Plaintiffs' Trade Secret Claim Also Fails Because Plaintiffs Failed To Maintain the Secrecy of Their Purported Ideas. ..................................................................................9

    D.   The Conversion Claim Also Fails Because It Is Preempted. .............................................14

    E.   The Claim For Declaratory Relief States No Claim Beyond Those Raised by the Substantive Claims.............................................................................................15

IV.  CONCLUSION....................................................................................................15

# TABLE OF AUTHORITIES

Page

## Cases

*AmerUS Life Ins. Co. v. Bank of Am., N.A.*,
   143 Cal. App. 4th 631 (2006) .......................................................................................7

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)........................................................................................... *passim*

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)....................................................................................4, 5, 11, 13

*Cypress Semiconductor Corp. v. Superior Court (Silvaco Data Sys.)*,
   163 Cal. App. 4th 575 (2008) .......................................................................................5

*Digital Envoy, Inc. v. Google, Inc.*,
   370 F. Supp. 2d 1025 (N.D. Cal. 2005) .......................................................................14

*Diodes, Inc. v. Franzen*,
   260 Cal. App. 2d 244 (1968) .......................................................................................9

*DVD Copy Control Ass'n, Inc. v. Bunner*,
   31 Cal. 4th 864 (2003) ...............................................................................................11

*Farhang v. Indian Inst. of Tech., Kharagpur*,
   No. C-08-02658 RMW, 2010 WL 2228936 (N.D. Cal. June 1, 2010)..........................5

*Forcier v. Microsoft Corp.*,
   123 F. Supp. 2d 520 (N.D. Cal. 2000) .......................................................................5, 8

*Halpern v. Shukla*,
   No. A138722, 2014 WL 3615986 (Cal. Ct. App. July 23, 2014) ..................................4

*HiRel Connectors, Inc. v. United States*,
   No. CV01-11069 DSF VBKX, 2006 WL 3618011 (C.D. Cal. Jan. 25, 2006)................9

*In re Providian Credit Card Cases*,
   96 Cal. App. 4th 292 (2002) ................................................................................12, 14

*Jolly v. Eli Lilly & Co.*,
   44 Cal. 3d 1103 (1988) ...............................................................................................8

*KEMA, Inc. v. Koperwhats*,
   No. C-09-1587 MMC, 2010 WL 3464737, (N.D. Cal. Sept. 1, 2010) ..........................9

*Kwikset Corp. v. Superior Court (Benson)*,
   51 Cal. 4th 310 (2011) ...............................................................................................15

*Language Line Servs., Inc. v. Language Servs. Assocs., Inc.*,
   944 F. Supp. 2d 775 (N.D. Cal. 2013) .......................................................................15

*Mangindin v. Washington Mut. Bank*,
   637 F. Supp. 2d 700 (N.D. Cal. 2009) .......................................................................15

*MedioStream, Inc. v. Microsoft Corp.*,
   869 F. Supp. 2d 1095 (N.D. Cal. 2012) .......................................................................6, 14

*Netbula, LLC v. BindView Dev. Corp.*,
   516 F. Supp. 2d 1137 (N.D. Cal. 2007) ......................................................................12, 13

*Nexsales Corp. v. Salebuild, Inc.*,
   No. C-11-3915 EMC, 2012 WL 216260 (N.D. Cal. Jan. 24, 2012) .......................................5

*Ngoc Nguyen v. Wells Fargo Bank, N.A.*,
   749 F. Supp. 2d 1022 (N.D. Cal. 2010) ...............................................................................15

*Norgart v. Upjohn Co.*,
   21 Cal. 4th 383 (1999) ...........................................................................................................6

*Pellerin v. Honeywell Int'l, Inc.*,
   877 F. Supp. 2d 983 (S.D. Cal. 2012).....................................................................................9

*Robinson & Wilson, Inc. v. Stone*,
   35 Cal. App. 3d 396 (1973) ..................................................................................................13

*Ruckelshaus v. Monsanto Co.*,
   467 U.S. 986 (1984)..............................................................................................................11

*Sears v. County of Monterey*,
   No. C 11-01876 SBA, 2012 WL 368688  (N.D. Cal. Feb. 3, 2012).....................................13

*Shroyer v. New Cingular Wireless Servs., Inc.*,
   622 F.3d 1035 (9th Cir. 2010) .............................................................................................15

*Silvaco Data Sys. v. Intel Corp.*,
   184 Cal. App. 4th 210 (2010) ..............................................................................................15

*Stutz Motor Car of Am., Inc. v. Reebok Int'l, Ltd.*,
   909 F. Supp. 1353 (C.D. Cal. 1995) ......................................................................................6

*Synopsys, Inc., v. ATopTech, Inc.*,
   No. C 13-cv-02965 SC, 2013 WL 5770542 (N.D. Cal Oct. 24, 2013)...................................5

*United Klans of Am. v. McGovern*,
   621 F.2d 152 (5th Cir.1980) ..................................................................................................6

*Wang v. Palo Alto Networks, Inc.*,
   No. C 12-05579 WHA, 2014 WL 1410346 (N.D. Cal. Apr. 11, 2014)...................................7

*Zody v. Microsoft Corp.*,
   No. 12-CV-00942-YGR, 2012 WL 1747844 (N.D. Cal. May 16, 2012) ............................13

**Statutes**

Cal. Civ. Code § 1550...............................................................................................................10, 12

Cal. Civ. Code § 1565...................................................................................................................12

Cal. Civ. Code § 3426...........................................................................................................5, 9, 15

JOINT MOTION TO DISMISS / CASE NO. 4:15-CV-02401-JSW

Cal. Civ. Proc. Code § 338 ............................................................................................................7

**Other Authorities**

California Uniform Trade Secrets Act ...................................................................................9, 14

Trade Secrets Practice in Cal. ........................................................................................................12

**Rules**

Fed. R. Civ. Proc. 8 ..........................................................................................................................4

Fed. R. Civ. Proc. 12 ........................................................................................................................4

JOINT MOTION TO DISMISS / CASE NO. 4:15-CV-02401-JSW

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Over the last four years, Uber's success has been well documented in the press.  It has become the most popular ride-sharing service in the world and a household name.  Despite Uber's public profile, not once in the last four years did Halpern or Celluride, the company he started, contact Uber's founders or investors and protest that Halpern was, in fact, the founder of the entire ride-sharing industry, as he does in this case.  Not once did he go to the press to claim that Uber's founders and investors engaged in a scheme to obtain and use his secret ideas.  He never filed a lawsuit alleging that any of the Defendants took his idea.  Now, however—after four years, the work of thousands of employees, and multiple public valuations—Halpern claims *all* those things.  And the price Plaintiffs demand for allegedly "founding" the idea for Uber?  *Over a billion dollars*.

The problem for Halpern in this case is that his story is just that—a story and ***not*** a viable complaint.  Plaintiffs' complaint fails for four reasons:

*First*, every one of Plaintiffs' claims is stale.  Plaintiffs allege that in 2006 Halpern started sharing his idea for the ride-sharing industry with certain Defendants (echoing that allegation, Halpern published a YouTube video about this case in which he again claims that he shared his idea with Uber employees in 2006).[1]  The problem for Plaintiffs is that in the following years Defendants' purported use of Halpern's "idea" was very much in the public eye, as Plaintiffs themselves concede.  Indeed, starting in 2010, Uber's rise was covered in media outlets large and small.  In all those years, however, Plaintiffs never alleged any of the purported wrongs in their Complaint.  It is now 2015, and the longest statute of limitations for Plaintiffs' claims—three years—has long since run.  Plaintiffs have no excuse for waiting so long, and thus the statute of limitations bars Plaintiffs' Complaint in its entirety.

*Second*, Plaintiffs' trade secret claim also fails because Plaintiffs do not have any secrets, as the Complaint confirms.  Plaintiffs' own statements show that to the extent Halpern disclosed anything to Defendants, he did not treat it as a secret.  Rather, even though he claims to have retained a well-known Silicon Valley law firm, his Complaint confirms that he shared his purported ideas without taking any

---

[1] *See* https://www.youtube.com/watch?v=JgqMqQ-uTeE.

measures to protect them, including what any inventor does as a matter of course:  require a confidentiality agreement.  The Complaint is devoid of references to either a confidentiality agreement or any other reasonable efforts by Plaintiffs to maintain the secrecy of the idea for an entire new industry.

*Third*, Plaintiffs allege that Defendants converted Halpern's ideas, but that claim, in addition to being time barred, is preempted not only by the Copyright Act but also by the California Uniform Trade Secret Act.

*Fourth*, Plaintiffs allege breach of contract, but Plaintiffs never identify a contract that was formed with any of the Defendants, nor do they allege the essential elements of a breach of contract claim.  Furthermore, even if Plaintiffs had identified a breach of contract, the claim, like the others, would be stale.

In sum, this is a case brought by a man who did not come up with the idea for Uber, and never said that he did until Uber was a highly valued company.  Unfortunately, this is a pattern:  Halpern previously sued Anu Shukla, who Halpern alleged started a company based in part on Halpern's ideas.  That case was dismissed with prejudice for litigation misconduct.  This case should be dismissed with prejudice before any additional costs are incurred.

## II.    BACKGROUND FACTS

### A.    Halpern Alleges That the Idea for the Ride-Sharing Industry Was His.

Halpern is a self-described entrepreneur who claims that he "was the original inventor of the idea, coding, design, appearance, application and prototype of what has now become commonly referred to as the Transportation Network Company" in 2002.  Compl. ¶ 1.[2]  He alleges that his ideas enabled "consumers to instantly locate and establish contact with available transportation, directly, without the need to reserve service in advance."  *Id.*  Halpern claims that the day he registered the URL for his company, Celluride, "was the birth of" of the Transportation Network Company or "ride sharing industry."  *Id.* ¶ 42; *see also id.* ¶¶ 4, 59.  Halpern claims he spent years working on this idea.  *Id.* ¶ 38.

---

[2] For the purposes of this motion only, allegations in the Complaint must be taken as true.

**B.   Uber's Success—and Defendants' Use of Halpern's Alleged Idea—Was Well Documented More Than Three Years Before Plaintiffs Filed Their Complaint.**

Halpern alleges that he was a figure in the "tech community" and attended "hundreds of conferences," "knew hundreds of technology VC's, including the 20 primary VC's that invested in mobile technology and applications," and that he was asking them if they were looking at mobile transportation apps. *Id.* ¶¶ 67, 106.  Assuming that is true, Defendants' purported use of his idea was widely known in his circle.  By 2010, TechCrunch, considered by some the highest read technology startup news source on the Web, was following Uber's blog, which disclosed First Round's funding. Declaration of Ragesh K. Tangri in Support of Defendants' Motions to Dismiss, ("TD") ¶¶ 18 & 43; Exs. 17 & 42.  By 2011, Kalanick's role was also public.  Plaintiffs themselves allege that Kalanick "emerged as the true CEO *prior to* the Series A round."  Compl. ¶ 121 (emphasis added).  As reported in the same outlets that Plaintiffs identify in the Complaint, the Series A round closed on Feb 2, 2011.[3]

These events were also well-documented in mainstream media outlets.  In March 2011, the New York Times reported that Uber was one of the companies creating buzz at highly-attended tech conference South by Southwest.  TD ¶ 2 & Ex. 1.  A month later, the Times reported on "[t]he founder of Uber, Travis Kalanick" and Uber's dozens of suitors.  TD ¶ 3 & Ex. 2.  In a separate article, the Wall Street Journal reported on the VC firms vying for Uber, including Defendants Benchmark and Gurley, whose investment valued Uber at $60 million.  TD ¶ 8 & Ex. 7.  In May of 2011, the New York Times reported that Uber was offering its services in San Francisco and coming to New York, and that it was founded by Kalanick and Camp.  TD ¶ 5 & Ex. 4.  By December of 2011, CNET reported that Uber raised $39 million in series B.  TD ¶ 25 & Ex. 24.  This reporting on Uber, Kalanick, and Uber's investors, continued for years.  *See*, *e.g.*, TD ¶¶ 2-49 & Exs. 1-48.  In sum, both technology and mainstream media outlets were chronicling Uber's business, its founders and investors, and valuations— more than four years before this lawsuit.  *See* Request for Judicial Notice ("RJN") at 1-2.

In addition to mainstream media, the Patent and Trademark Office began publishing information about Uber in 2011.  Halpern alleges that he undertook an "analysis of the existing private transportation infrastructure and its methods of deployment . . . ."  Compl. ¶ 36.  If that's true, Halpern would have

---

[3] https://angel.co/uber (cited in Compl. ¶ 124).

noticed that no later than the end of 2011 that Uber's patent applications were published and they listed Kalanick and Camp as the inventors.  TD ¶¶ 53-54 & Exs. 52-53; RJN at 2-3.

### C.   Halpern Shared His Alleged Invention with Others Without Any Written Protection.

In 2004, Halpern allegedly engaged the prestigious firm of Wilson, Sonsini, Goodrich & Rosati. Compl.  ¶ 56.  Nonetheless, Halpern concedes that he shared his purported invention without any written protections.  Halpern alleges that in July 2006 he met Defendant Travis Kalanick in the office of one of Halpern's friends, Jonathan Abrams, "a prominent entrepreneur."  *Id.* ¶ 69.  Halpern believed that Kalanick could potentially form "a business relationship" with Halpern.  *Id.* ¶ 73.  Halpern alleges that sometime during this period (although he declines to say when) he shared Celluride trade secrets with Kalanick, but only after purportedly eliciting unspecified assurances of confidentiality.  *Id.* ¶ 78.

Halpern alleges that he met Defendant Bill Trenchard in mid-2007.  Halpern hoped that Trenchard would invest in, or attract investors to, Celluride.  *Id.* ¶¶ 87-89.  Halpern allegedly described the Celluride concept to Trenchard, provided him with Celluride materials, and conducted a product demonstration for him.  *After* Halpern made these disclosures, Trenchard allegedly gave Halpern promises of confidentiality.  *Id.* ¶ 91.  Halpern alleges that he shared additional Celluride materials with Trenchard in Spring 2008.  Similarly, Halpern alleges that in 2008 he shared Celluride materials with Defendants Bill Gurley and Scott Belsky in the hopes of securing investors.  *Id.* ¶¶ 95, 97-99. [4]

### III.   PLAINTIFFS' CLAIMS ARE FATALLY FLAWED AND SHOULD BE DISMISSED.

### A.   Plaintiffs Cannot Satisfy the Legal Standard for a Viable Complaint.

Every complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. Proc. 8 (a)(2).  Under *Ashcroft v. Iqbal*, a complaint fails this requirement, and is subject to dismissal under Rule 12(b)(6), if it fails to set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Only factual

---

[4] Again, this is not the first time Halpern has turned up after a company grew successful.  He sued Ms. Shukla on the basis that he helped come up with the idea for the company that she led and that he was therefore entitled to a stake in it.  Another party to that lawsuit, *Halpern v. Shukla*, No. A138722, 2014 WL 3615986, at *1 (Cal. Ct. App. July 23, 2014), settled the claim against him before the suit against Ms. Shukla was thrown out due to Mr. Halpern's litigation misconduct.  TD ¶ 50 & Ex. 49.

allegations count, and the complaint's factual allegations must "plausibly suggest an entitlement to relief[,]" requiring a plaintiff to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678 & 681; *see also Synopsys, Inc., v. ATopTech, Inc.*, No. C 13-cv-02965 SC, 2013 WL 5770542, at *4 & 7 (N.D. Cal. Oct. 24, 2013) (dismissing copyright infringement and trade secret misappropriation claims because complaint contained speculative facts and failed to provide a reasonable basis for inferring materials were trade secrets); *Farhang v. Indian Inst. of Tech., Kharagpur*, No. C-08-02658 RMW, 2010 WL 2228936, at *15 (N.D. Cal. June 1, 2010) (trade secret misappropriation claim dismissed for lack of adequate factual allegations).  It is not sufficient, for example, to plead facts that "do not permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679.  The *Iqbal* standard requires the Court to disregard legal conclusions, which "are not entitled to the assumption of truth." *Id.*  Nor do "naked assertions," "labels and conclusions," or a "formulaic recitation" of claim elements suffice.  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555 & 557); *see also Nexsales Corp. v. Salebuild, Inc*., No. C-11-3915 EMC, 2012 WL 216260, at *1-2 (N.D. Cal. Jan. 24, 2012) (dismissing trade secret claim because plaintiff did "not provide facts demonstrating that the information constitutes a trade secret.").

## B. All of Plaintiffs' Claims Are Time-Barred.

### 1. The Trade Secret Claim Is Well Beyond the Statute of Limitations.

Plaintiffs were required to bring their California Uniform Trade Secret Act ("CUTSA") claim within three years of discovering it.  Cal. Civ. Code § 3426.6.  The first alleged act of misappropriation begins the running of the statute.  *Cypress Semiconductor Corp. v. Superior Court (Silvaco Data Sys.)*, 163 Cal. App. 4th 575, 582 (2008); *Forcier v. Microsoft Corp.*, 123 F. Supp. 2d 520, 525 (N.D. Cal. 2000).  Subsequent acts do not restart the limitations period.  Cal. Civ. Code § 3426.6 ("For purposes of this section, a continuing misappropriation constitutes a single claim.").

Constructive knowledge triggers the statute:  "An action for misappropriation must be brought within three years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered." *Id.*  "Discovery" does not require knowledge; it requires only suspicion: A plaintiff "discovers" the cause of action when "he at least suspects a factual basis, as opposed to a legal theory, for its elements, even if he lacks knowledge thereof—when, simply put, he at least suspects . . .

that someone has done something wrong to him." *MedioStream, Inc. v. Microsoft Corp.*, 869 F. Supp. 2d 1095, 1108-09 (N.D. Cal. 2012) (quoting *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 397 (1999) (alteration in original)).  Not surprisingly—and fatal to Plaintiffs' claim here—pervasive media coverage triggers the statute:  "[W]idespread publicity alone is sufficient for constructive knowledge[,]" including publicity from "advertising, media reporting, and distribution of [a product]." *Stutz Motor Car of Am., Inc. v. Reebok Int'l, Ltd.*, 909 F. Supp. 1353, 1362 (C.D. Cal. 1995), *aff'd*, 113 F.3d 1258 (Fed. Cir. 1997) (citing *United Klans of Am. v. McGovern*, 621 F.2d 152, 154 (5th Cir.1980)).  A court may determine at the motion to dismiss stage that constructive knowledge existed.  *See MedioStream*, 869 F. Supp. 2d at 1111.

A plaintiff cannot—as Plaintiffs attempt to here—avoid facts that are pleaded in the complaint, referenced in the complaint, or widely known.  Here, Plaintiffs' own allegations confirm that Halpern had constructive knowledge of his claims, and Plaintiffs pleaded no excuse for their tardiness.  Indeed, Plaintiffs make only one half-hearted attempt to avoid the statute of limitations:  they plead that Kalanick was a "behind the scenes, de-facto, CEO/COO," in an "effort to occult KALANICK's role with UBER." Compl. ¶ 121.  Plaintiffs allege that Kalanick "*deliberately concealed* his connection to, and role within, UBER so HALPERN would not find out about it." *Id* (emphasis supplied).  The problem for Plaintiffs is that Plaintiffs' own allegations undercut their "secret CEO" theory and defy common sense, especially given the media microscope that Uber was under.  In the very same paragraph of the Complaint that lays out that theory, Plaintiffs allege that Kalanick "*emerged as the true CEO prior to the Series A round*." *Id*. (emphasis added).  According to https://angel.co/uber, cited in the Complaint for evidence of Uber's funding rounds, the Series A round closed on Feb 2, 2011, *more than four years before this lawsuit was filed*.[5]  When Halpern learned that the person to whom he allegedly disclosed his prized invention was accepting funding for that very invention, he should "at least [have] suspect[ed] . . . that someone ha[d] done something wrong to him." *MedioStream, Inc.*, 869 F. Supp. 2d at 1108-09.

Plaintiffs' insinuation that Halpern did not discover any alleged appropriation until after March 15, 2012[6] is "not plausible" under the *Iqbal* test, or any other test, in the face of the wide-spread

---

[5] https://angel.co/uber (cited in Compl. ¶ 124).

[6] Plaintiffs filed on May 14, 2015; there was a 60-day tolling agreement.

JOINT MOTION TO DISMISS / CASE NO. 4:15-CV-02401-JSW

publicity.  Uber's launch and growth, and Kalanick's leadership of Uber, has been widely chronicled in the media.  Indeed, Defendants' Request for Judicial Notice (filed concurrently) identifies some thirty articles appearing in such sources as the *New York Times*, the *Wall Street Journal*, the *Washington Post*, *USA Today*, and *Fox News*, as just a few examples of the extensive media coverage Uber received in the 2010 through early-2012 time frame, which included discussions of Mr. Kalanick's very public role in Uber.  *See* TD ¶¶ 2-33 & Exs. 1-32; RJN at 1-2.

Furthermore, more than three years before Plaintiffs filed this case, Uber's patent applications began to be published.  The inventors on those applications include some of the very people that Plaintiffs now claim misappropriated their trade secrets:  The '254 Application, which was published on December 8, 2011, lists Camp and Kalanick as inventors.  TD ¶ 53 & Ex. 52; RJN at 2-3.  The Abstract references a system and method "for enabling transportation to be arranged for individuals carrying handsets or mobile devices.  In some embodiments, a customer can transmit a request for transport from a given customer geographic location.  A service may handle the request by selecting a driver for the customer."  *Id.*  Similarly, the '493 Application, published December 22, 2011, put the public on notice of Camp's and Kalanick's inventions.  TD ¶ 54 & Ex. 53; RJN at 2-3.

In sum, even a layperson could not have missed Uber's success and Mr. Kalanick's role therein, let alone a person like Mr. Halpern, who was allegedly a figure in the community, attended relevant meetings, and monitored developments in his arena.  As Judge Alsup recently held, in situations like this, judges have found misappropriation claims time-barred.  *See Wang v. Palo Alto Networks, Inc.*, No. C 12-05579 WHA, 2014 WL 1410346, at *6 (N.D. Cal. Apr. 11, 2014).

### 2.     The Conversion Claim Is Time-Barred Because the Statute of Limitations for It Was Triggered at the Same Time as for Misappropriation.

The conversion claim also is barred by the statute of limitations.  A conversion claim, like a trade secret misappropriation claim, is subject to a three-year limitations period.  Cal. Civ. Proc. Code § 338(c); *AmerUS Life Ins. Co. v. Bank of Am., N.A.*, 143 Cal. App. 4th 631, 639 (2006).  A conversion claim accrues "when the plaintiff suspects or should suspect that her injury was caused by wrongdoing, that someone has done something wrong to her. . . .  Once the plaintiff has a suspicion of wrongdoing, and therefore an incentive to sue, she must decide whether to file suit or sit on her rights.  So long as a

suspicion exists, it is clear that the plaintiff must go find the facts; she cannot wait for the facts to find her." *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1110-11 (1988) (internal citation omitted).

Because Plaintiffs' claim for conversion arose out of the alleged infringement of their copyrights (or misappropriation of their trade secrets), the statute of limitations on both claims began running at the same time, and the limitations period similarly expired prior to the filing of the Complaint. *See Forcier*, 123 F. Supp. 2d at 527 (rejecting "continuing breach" theory for separate claims based on the same alleged misappropriation).

### 3. The Breach of Contract Claim Likewise Is Time-Barred Because Halpern Had Constructive Knowledge of It Years Ago.

Plaintiffs never identify any contract with any Defendant, but if they had, the claim would be time-barred because it is not based on a written instrument and was not brought within two years. Plaintiffs nowhere plead the terms of any alleged contract, but allege only that: "The actions of KALANICK, as a founder/agent of UBER, and TRENCHARD as a founder/agent/partner of FOUNDER COLLECTIVE and/or FIRST ROUND CAPITAL, and DOES 1-10 & 51-60 as described above constitute breach of actual or implied contract." Compl. ¶ 159. As discussed above, there are general references in the Complaint to "stealth mode"; "promises"; "assurances"; sharing "in confidence"; that Halpern "believed" that defendants were acting in a confidential capacity; and that Halpern, "in discussion with KALANICK and others," only shared information when he was given "an agreement to keep the company's development and trade secrets private." Compl. ¶ 74. None of this language gives rise to an enforceable contract.

Even if some contract of confidentiality existed, it would be at best an oral agreement. There is no allegation in the Complaint that a written contract was entered into by any Defendant at any time. Any claim for breach of oral contract must be brought within two years. Cal. Civ. Proc. Code § 339. According to the Complaint, any breach of an agreement to keep information confidential occurred at least as early as October 2008 at The Lobby conference. *See* Compl. ¶¶ 101-107. Thus, at best, this lawsuit was filed well after the statute of limitations for oral contracts would have run.

**C.      Plaintiffs' Trade Secret Claim Also Fails Because Plaintiffs Failed To Maintain the Secrecy of Their Purported Ideas.**

The California Uniform Trade Secrets Act ("CUTSA") explicitly defines a trade secret as information that derives value from not being generally known to the public and is "the subject of efforts that are reasonable under the circumstances to maintain its secrecy. Cal. Civ. Code §§ 3426-3426.11 (1984) & Cal. Civ. Code § 3426.1(d).

A court may determine whether a plaintiff has sufficiently pleaded a trade secret under CUTSA, including whether a plaintiff undertook reasonable efforts to maintain the secrecy thereof, on a motion to dismiss.  *See Pellerin v. Honeywell Int'l, Inc*., 877 F. Supp. 2d 983, 990 (S.D. Cal. 2012) (quoting *Diodes, Inc. v. Franzen*, 260 Cal. App. 2d 244, 253 (1968), and dismissing a trade secret counterclaim (citing *Iqbal*, 556 U.S. at 678)); *KEMA, Inc. v. Koperwhats*, No. C-09-1587 MMC, 2010 WL 3464737, at *6 (N.D. Cal. Sept. 1, 2010) (dismissing trade secret claim where plaintiff "admitted by his allegations that he provided the source code for Version 3.3 of his software to [counterdefendant] without any confidentiality agreement or other restriction; . . . ."); *see also HiRel Connectors, Inc. v. United States*, No. CV01-11069 DSF VBKX, 2006 WL 3618011, at *8 (C.D. Cal. Jan. 25, 2006) (granting summary judgment where plaintiff failed to "point[] the Court to the NDAs it supposedly entered with" defendant.).

One would think that under the circumstances alleged here, Mr. Halpern, who spent years building on his purported idea and surrounding himself with advisors, including a well-known law firm, would have carefully guarded a purportedly valuable idea for a new industry.  But that did not happen. Instead, accepting the Complaint as true, all of the alleged secrets were disclosed without an agreement of confidentiality to one or more of the Defendants, making them "known," not "secret."

Assuming, as we must for this motion, that Plaintiffs' verified claims are true, Plaintiffs have alleged facts that show that Halpern freely disclosed all the information designated as "trade secrets" in the Complaint to Defendants Gurley, Belsky, and Trenchard, with no agreement of confidentiality.  Thus, Plaintiffs' "secrets" are "generally known to . . . persons who can obtain economic value from [their] disclosure or use," and therefore are not protectable trade secrets. Cal. Civ. Code § 3426.1(d)(2).

According to the Complaint, Plaintiff Halpern disclosed the following secrets without receiving any agreement of confidentiality:

To Defendant Belsky:  The Celluride Executive Summary, which sets out virtually all of Halpern's ideas for his planned Transportation Network Company.  Compl. Ex. J.  Plaintiffs have attached to their Complaint an email exchange showing on its face that Halpern's disclosure of the Executive Summary to Belsky was not made in confidence.[7]  They do not plead otherwise.  *Id.* ¶ 98.

To Defendant Trenchard:  A detailed description of "the Celluride concept"; the "Celluride Brochure"; and "other materials described in Paragraphs 53-55, 63, 79-80."  Compl. Ex. F. & ¶ 91.  Halpern also conducted for Trenchard a "product demonstration complete with the live maps and GPS features."  *Id.* ¶ 91.  Only *after* these disclosures did Halpern allegedly receive from Trenchard "promises to keep HALPERN'S trade secrets confidential," at which point Halpern also emailed the Executive Summary to Trenchard.[8]

To Defendant Gurley:  Celluride's cellphone demonstration, "describing its functionality, the potential market demand, and financial potential of the concept as well as the work that CELLURIDE had done on development of the demo."  *Id.* ¶ 97.  Halpern pleads that he "was led to believe that GURLEY would keep [his] trade secrets confidential," but that allegation, even if true, does not plead facts to support an enforceable agreement by Gurley to keep the cellphone demonstration information confidential.  *Id.*  Halpern does not allege who led him to believe the alleged discussion was confidential, whether both parties agreed, what the terms of any agreement might have been, nor what consideration was exchanged.  In other words, Halpern alleges *none* of the four required factors for establishing a contract in California.[9]  Any material shared with him, therefore, could not have been shared pursuant to a confidentiality agreement.

The information that Halpern alleges he disclosed freely to Gurley, Belsky, and Trenchard

---

[7] *Id.* Ex. I.  In the email exchange set forth in Exhibit I, there is no request for confidentiality, much less an agreement.  Despite the lack of a nondisclosure agreement, Halpern writes:  "I am attaching the 2 page Celluride Exe sum for you to review to give you a background on what we are creating."

[8] *Id.* (This is the same Executive Summary he emailed to Belsky with no confidentiality at all.)

[9] Cal. Civ. Code § 1550.  A more detailed argument about the legal insufficiency of any confidentiality agreement alleged by Plaintiffs is found below.

comprises *all* of the trade secrets specifically claimed in the Complaint.[10]  Thus, Plaintiffs' trade secret claim must be dismissed, as Plaintiffs have established that they disclosed their alleged trade secrets.

The Complaint and exhibits also reference others with whom Halpern never claims he had a confidentiality agreement.  For example, Halpern alleges that he "spent years" working on Celluride product features "with black car fleets, drivers and corporate administrators from leading investment banks and law firms that wanted to participate in the beta launch of CELLURIDE's Celluride app In [*sic*] New York."  *Id.* ¶ 93.  Halpern does not allege that he had a confidentiality agreement with any (much less all) of these third parties.  Likewise, the exhibits show that at least four people worked on the documents that contain the alleged trade secrets, but Plaintiffs have not alleged (let alone cited) a single confidentiality agreement with one of these people.  *See* Compl. Ex. G.

Even if any trade secret still existed notwithstanding the above disclosures, Plaintiffs have not alleged reasonable efforts to maintain its secrecy.  The extent of the property right in a trade secret "is defined by the extent to which the owner of the secret protects his interest from disclosure to others. . . . If an individual discloses his trade secret to others who are under no obligation to protect the confidentiality of the information, or otherwise publicly discloses the secret, his property right is extinguished."  *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1002 (1984) (internal citations omitted); *DVD Copy Control Ass'n, Inc. v. Bunner*, 31 Cal. 4th 864, 880-81 (2003), *as modified* (Oct. 15, 2003). The Complaint, however, makes just ***one*** direct allegation of Plaintiffs' efforts to maintain secrecy: "This [*sic*] Information and Procedures were secret and PLAINTIFFS took appropriate steps to maintain the secrecy of the trade secrets involved with CELURIDE's [*sic*] creation and development of Celluride." Compl. ¶ 132.  This allegation is a classic example of "an unadorned, the-defendant-unlawfully-harmed-me accusation," prohibited by *Iqbal*.  *Iqbal*, 556 U.S. at 678.  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Id.* (quoting *Twombly*, 550 U.S. at 555).

---

[10] Plaintiffs claim a trade secret in the idea of launching Celluride in New York., *see* Comp. ¶ 123 ("UBER's launch in NYC it is yet another part of the theft of PLAINTIFFS' trade secrets by KALANICK, UBER and other DEFENDANTS."), but the New York launch plans were disclosed freely to Belsky in the Executive Summary, *see* Compl., Ex. J ("Celluride's go-to-market strategy will consist of doing a revenue generating launch in one or two key markets such as New York City and San Francisco. . . .").

JOINT MOTION TO DISMISS / CASE NO. 4:15-CV-02401-JSW

1    Plaintiffs' only other allegations as to maintaining secrecy are even weaker.  In California, courts

2    repeatedly list several factors found in successful trade secret claims:  1) restricting access to and

3    maintaining physical segregation of the information; 2) obtaining confidentiality agreements; and 3)

4    marking documents with warnings or reminders of confidentiality.[11]  Plaintiffs make general allegations

5    with respect to all three factors.  First, Plaintiffs claims that Halpern "restricted access to the information

6    concerning CELLURIDE to those persons who had a business reason to know the information and

7    otherwise kept the information in a restricted area."  Compl. ¶ 74.  Plaintiffs plead no details of any

8    physical restriction with respect to the materials, making this allegation the type of "formulaic recitation"

9    that "will not do" under *Iqbal*.

10    Second, Plaintiffs suggest that Halpern had confidentiality agreements with some individual

11    Defendants, but Plaintiffs' allegations do not set forth any enforceable agreements:  Plaintiffs allege that

12    Halpern told Kalanick and Trenchard that Celluride was in "stealth mode"; that he allegedly obtained

13    unspecified "promises" and "assurances" that any sharing was "in confidence"; that he allegedly

14    "believed" that defendants were acting in a confidential capacity; and that he shared information

15    concerning Celluride to Kalanick and (unspecified) others "only when he was given a promise of

16    confidentiality and an agreement to keep the company's development and trade secrets private."  *Id.*

17    ¶¶ 74, 76, 78, 91, 97, 100, 102.  Under *Iqbal* and California contract law, none of these bare allegations

18    suffices to plead the existence of a contract.

19    Under California law, the existence of contract requires the pleading of four elements:  1) Parties

20    capable of contracting; 2) their consent; 3) the object of the contract, which must be legal; and 4)

21    sufficient consideration.  Cal. Civ. Code § 1550.  The consent of the parties must be: free, mutual, and

22    communicated by each party to the other.  Cal. Civ. Code § 1565.  Contract terms "must also be

23    sufficiently definite in all particulars essential to its enforcement."  *Netbula, LLC v. BindView Dev.*

24    *Corp.*, 516 F. Supp. 2d 1137, 1155 (N.D. Cal. 2007).  While every term and condition need not be set

25    forth in the contract, "the scope of the duty and limits of acceptable performance must be at least

26

---

27    [11] *In re Providian Credit Card Cases*, 96 Cal. App. 4th 292, 304 (2002) (citing *Trade Secrets Practice in Cal.*, §§ 4.9-4.10 (2d ed. 1999), a "leading treatise [that] has collected the cases of successful and

28    unsuccessful claims of secrecy protection").

JOINT MOTION TO DISMISS / CASE NO. 4:15-CV-02401-JSW

sufficiently defined to provide a rational basis for the assessment of damages in the case of breach." *Id.* (citing *Robinson & Wilson, Inc. v. Stone*, 35 Cal. App. 3d 396, 407 (1973)).

To the extent that a plaintiff "simply alleges a contract existed, that allegation is itself conclusory because the contract's formation and its terms (among other things) are unclear." *Zody v. Microsoft Corp.*, No. 12-CV-00942-YGR, 2012 WL 1747844, at *4 (N.D. Cal. May 16, 2012) (citing *Twombly*, 550 U.S. at 555). A plaintiff fails to state a plausible claim for breach of contract where "no facts are alleged regarding the terms of the alleged . . . contract, the identity of the parties to said agreement or the particular provisions allegedly breached by Defendants." *Sears v. County of Monterey*, No. C 11-01876 SBA, 2012 WL 368688, at *4 (N.D. Cal. Feb. 3, 2012); *see id.* ("If [plaintiff's] intention is to state a claim for breach of contract, he must allege such facts to support each element of his claim.") (citing *Iqbal*, 556 U.S. at 678). None of Plaintiffs' suggestions of alleged promises confidentiality rises to the level of a contract.

Third and finally, of the approximately 155 pages of exhibits attached to the complaint, only one document – the Celluride Product Requirements Document ("PRD") – appears to be marked as confidential.[12] A disclaimer on the PRD reads: "The contents of this document constitute valuable proprietary and confidential property of Celluride Wireless and are provided subject to specific obligations of confidentiality set forth in one or more binding legal agreements. Any use of this material is limited strictly to the uses specifically authorized in the applicable agreement(s) pursuant to which such material has been furnished." Compl. Ex. G. This disclaimer is important for two reasons. First, it shows that Plaintiff Halpern was sophisticated enough to understand how to use a disclaimer, approximately 18 months before Halpern allegedly gave the PRD to Defendant Trenchard. Compl. ¶ 93. More importantly, it highlights the fact that 1) Plaintiffs have not alleged that *any* Defendant agreed to the PRD's "specific obligations of confidentiality set forth in one or more binding legal agreements," and 2) Halpern did not mark as confidential any of the other documents attached as exhibits to the Complaint. Marking some documents confidential and not marking others has been deemed by a trial court to be

---

[12] Compl. Ex. G (The PRD is one of several documents in Exhibit G.). Defendants do not concede the authenticity of this document, indeed it appears to be an incomplete draft, but it is the only document included in the Complaint that even has a hint of a disclaimer.

"circumstantial evidence that defendants had not previously treated [the unmarked documents] as trade secrets."[13]

In sum, even if trade secrets exist outside those that Halpern shared with Gurley, Belsky, and Trenchard, Plaintiffs took none of the steps recognized in California law to keep them secret.

**D.     The Conversion Claim Also Fails Because It Is Preempted.**

As explained in Defendants' Opposition to Remand, Section III.A, the conversion claim is preempted by the Copyright Act, because in substance it seeks relief for infringement of the "look and feel" of Plaintiff's user interface and other allegedly copyrighted elements of Plaintiffs' "Transportation Network."  Accordingly, the conversion claim must be dismissed.

To the extent Plaintiffs intend their conversion claim to reach materials outside the scope of copyright, such as the alleged trade secrets or unspecified "confidential information" qualifying neither as a trade secret nor for copyright protections, CUTSA "preempts" those claims because they are "based on the same nucleus of facts as the misappropriation of trade secrets claim for relief."  *Digital Envoy, Inc. v. Google, Inc.,* 370 F. Supp. 2d 1025, 1035 (N.D. Cal. 2005); *MedioStream, Inc.*, 869 F. Supp. 2d at 1114-16.

Plaintiffs' claim for conversion states:  "PLAINTIFF HALPERN was the inventor of the P2P transportation industry now known commonly as the ridesharing industry or TNC and, more specifically, that technology which was converted by the DEFENDANTS to their own use and benefit as the TNC app UBER."  Compl. ¶ 148.  Plaintiffs also claim that certain of the Defendants "conspired together at The Lobby conference to unlawfully misappropriate, acquire and convert the intellectual property, copyrights, trade secrets and other property rights of HALPERN and CELLURIDE."  Compl. ¶ 107.  Thus, Plaintiffs' conversion allegation is not only "based on the same nucleus of facts" as the trade secret claim; it is an identical claim.

It is well-established that such a claim is preempted:  "In order to state a claim for conversion, the plaintiff must identify some *property* in which he had *property rights* with which the defendant could,

---

[13] *In re Providian Credit Card Cases*, 96 Cal. App. 4th at 308; *see also id.* (in unsealing records claimed to be trade secrets, court protected report where each page was stamped "CONFIDENTIAL," and the front page of the report was stamped "DO NOT COPY OR DISTRIBUTE," but did not protect unmarked reports, finding that "[t]he law recognizes the truth of the adage that actions speak louder than words.").

and did, interfere. If the only arguable property identified in the complaint is a trade secret, and the only basis for any property right is trade secrets law, then a conversion claim predicated on the theft of that property is unquestionably "based upon misappropriation of a trade secret" (§ 3426.7, subd. (b)) and the conversion claim is preempted." This is a problem that must be addressed at the pleadings stage. It is never "premature" to require that the plaintiff allege facts sufficient to constitute a viable cause of action.[14] Thus, here, the conversion claim must be dismissed. *Silvaco Data Sys.*, 184 Cal. App. 4th at 236.

### E. The Claim for Declaratory Relief States No Claim Beyond Those Raised by the Substantive Claims.

Where a court decides that a complaint has failed to state any substantive claims, there is no actual or present controversy that would give rise to a claim for declaratory relief, and any declaratory relief claim should be dismissed. *See Ngoc Nguyen v. Wells Fargo Bank, N.A.*, 749 F. Supp. 2d 1022, 1038 (N.D. Cal. 2010); *accord Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1044 (9th Cir. 2010) (dismissal of declaratory relief claim proper where court dismissed all claims for substantive relief). Thus, if Plaintiffs' First, Second, and Third Causes of Action fail, so must their Fourth Cause of Action for Declaratory Relief. Moreover, Plaintiffs seek declaratory relief only with regard to their separately pleaded substantive claims: "PLAINTIFFS seek a judicial determination regarding these claimed respective rights and interests in the technology and application and the profits therefrom." Compl. ¶ 165. However, "[a] claim for declaratory relief is unnecessary where an adequate remedy exists under some other cause of action." *Mangindin v. Washington Mut. Bank*, 637 F. Supp. 2d 700, 707 (N.D. Cal. 2009). Thus, Plaintiffs' cause of action for declaratory relief should be dismissed under any circumstance.

## IV.   CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion to dismiss.

---

[14] *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 238-39 (2010), *as modified on denial of reh'g* (May 27, 2010), *disapproved on other grounds by Kwikset Corp. v. Superior Court (Benson)*, 51 Cal. 4th 310, 337 (2011), quoted favorably in *Language Line Servs., Inc. v. Language Servs. Assocs., Inc.*, 944 F. Supp. 2d 775, 780 (N.D. Cal. 2013).

Dated:  July 13, 2015                          DURIE TANGRI LLP

                                    By:  _____
                                                /s/ Ragesh K. Tangri
                                              RAGESH K. TANGRI

                                         Attorneys for Defendants
                                         UBER TECHNOLOGIES, INC., TRAVIS
                                         KALANICK, GARRETT CAMP, BILL
                                         TRENCHARD, SCOTT BELSKY, BILL GURLEY,
                                         BENCHMARK CAPITAL, BENCHMARK,
                                         FOUNDER COLLECTIVE, FIRST ROUND
                                         CAPITAL, RASIER, LLC, RASIER-CA, LLC

1

**CERTIFICATE OF SERVICE**

2

      I certify that all counsel of record is being served on July 13, 2015 with a copy of this document

3

via the Court's CM/ECF system.

4

5

                                       */s/ Ragesh K. Tangri*

                                       RAGESH K. TANGRI

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT MOTION TO DISMISS / CASE NO. 4:15-CV-02401-JSW